Opinion delivered March 1, 1884.

---

[No. 1631.]

HENRY DAVIS *v.* THE STATE.

ASSAULT WITH INTENT TO MURDER—CHARGE OF THE COURT.—That the assault was committed with the *intent* to murder the deceased is an in-dispensable element of the offense of assault with intent to murder, and is the very gist of the offense, and is a fact determinable by the jury from the evidence. Hence, in a trial for assault with intent to murder, a charge was erroneous which authorized the jury to find the defendant guilty if they found that the assault alone, independent of the intent, was committed as charged in the indictment, and that the offense would have been murder if death had resulted from the assault, and that de-fendant in that event would be presumed to have made the assault with the intent to murder. See the opinion *in extenso* for such a charge, and for an elaboration of the ruling.

APPEAL from the District Court of Lavaca. Tried below before the Hon. E. Lewis.

The indictment charged the appellant with an assault with intent to murder one. Albert Maulding, on the first day of May, 1883, in the county of Lavaca. A verdict of guilty assessed his punishment at a term of two years in the penitentiary.

Albert Maulding was the first witness for the State. He testified that on the day alleged in the indictment he went to Hackberry, three miles distant from his home, to purchase supplies, and, passing the house of Delphi Rice en route, promised to inquire for letters for her at the postoffice. At Hackberry witness met defendant, Rob. Payne, and Henry Nobles, and engaged them for a time in friendly conversation. Defendant, Payne and Nobles left Hackberry before witness did, saying that they were going to a party at Oakland, some four miles distant from Hackberry. Oakland was due east from Hackberry. Witness and the parties named lived on a different road, southeast from Hackberry. Witness left Hackberry about sundown for home, and reached Delphi Rice's about dark. At her door witness called to her that he found no mail for her. Immediately after the witness spoke to Delphi, some one near the door cried out: "What in the h—ll do you want here?" Witness replied, "Who in the h—ll are you?" At this time three men, the defendant, Payne and Nobles, advanced upon witness. Payne walked to witness, caught the bridle of his mule, cursed the witness and demanded that witness get down to fight. Witness got down. At this time defendant walked up, took a pistol from his inside vest pocket, and put it in his pants pocket. An altercation ensued, Payne swearing, cursing and using violent language, flourishing his knife and threatening to cut the witness's heart out. Defendant interfered, saying that Payne was joking, and peace was restored for a short time.

In a few minutes Payne again began his abuse and threats, and, as witness went into Delphi's house, Payne cut at him with his knife, inflicting a slight scratch on his breast. Witness went into Delphi's house, and while there loaded his pistol. The parties mentioned rode off, and witness started home, accompanied by Delphi. After going a short way, witness saw the defendant galloping after him, flourishing his pistol and threatening to kill him. Delphi caught and held witness's hand. Defendant galloped up, sprang from his horse, fired a shot at wit-

ness which grazed his ear, and was preparing to shoot again when witness fired and struck the defendant. Defendant's horse broke loose and defendant ran after him. No one was present at this time save witness, Delphi and defendant. Nobles and Payne were some distance ahead. They returned afterwards and assisted defendant to catch his horse. Witness did not see Frank Mayfield that night. Witness never admitted to Tom. Newton at any time that he, witness, was in the wrong.

Delphi Rice, for the State, testified that a short time before Maulding came to her door she heard defendant and Payne talking near her door. Payne said that he was going to kill Maulding. Defendant told Payne to go ahead; that he would help him; that he, defendant, had a good pistol and would shoot Maulding. In all other respects this witness corroborated the testimony of the witness Maulding.

Frank Whitfield testified, for the defense, that after returning from Hackberry and eating supper he walked over to Payne's house, which was some four hundred yards from Delphi Rice's house. Payne was absent. Witness heard loud talking in the direction of Delphi's house, and went to a point near it to ascertain the occasion of it. He then found Maulding, defendant, Payne and Nobles engaged in a quarrel. At a point up the road some distance from Delphi's house witness got over a fence and sat down for a private purpose. While there he saw the witness Maulding draw a pistol, and saw the defendant run. Maulding fired at the defendant and struck him in the back. As the defendant was running he fired back at Maulding, over his shoulder, but did not hit Maulding.

Rob. Payne corroborated the witness Whitfield with reference to the shooting.

Tom. Newton testified, for the defense, that on the night of the shooting, after it was over, witness Maulding came to him and requested him to go with him to see Payne and defendant, and effect a compromise. They went, accompanied by Simon Whitfield. The parties met and talked the matter over. Maulding said that he was in the wrong, and begged to keep the matter out of court. This was agreed to.

Simon Whitfield corroborated the testimony of the witness Newton.

The motion for new trial was based upon the one question discussed in the opinion.

*A. P. Bagby*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

White, Presiding Judge. That particular paragraph of the charge to the jury which was excepted to is in these words, viz: "If the jury find from the evidence that the defendant Henry Davis did, as charged in the indictment, commit an assault upon the said Albert Maulding, and that, had death resulted to said Albert from said assault, the offense would have been murder— whether of the first or second degree is immaterial—then the defendant is presumed to have made the assault with that intent, and the jury should find him guilty and assess his punishment at confinement in the penitentiary for a term of not less than two nor more than seven years."

The indictment charged that defendant did "in and upon the person of Albert Maulding, a reasonable creature in the peace of God and the State then and there being, make an assault with a certain pistol, which said pistol was then and there a deadly weapon, and that he the said Henry Davis did then and there make said assault upon him the said Albert Maulding, with the unlawful and felonious intent on his part, and of his express malice aforethought, him the said Albert Maulding to kill and murder," etc.

It will be seen that the charge of the court authorized the jury to find the defendant guilty of assault with intent to murder if they found the assault alone, independent of the intent, was committed as charged in the indictment, provided death had resulted from the assault, and that defendant in such event would be presumed to have made the assault with intent to murder. The assault charged in the indictment was an assault with a pistol, a deadly weapon. Would an assault with a pistol, a deadly weapon, necessarily be an assault with intent to murder, where, if death had ensued, the offense would have been murder? Clearly not; because, whilst the law makes it murder to kill, or to do serious bodily harm likely to produce death, where death follows in consequence of the injury inflicted, it does not make an assault which is likely to produce serious bodily harm, even though it might have been murder,

an assault with intent to murder, unless *the intent to murder* was the object and purpose of such assault.

It is true the law says that "whenever it appears upon a trial for assault with intent to murder that the offense would have been murder had death resulted therefrom, the person committing such assault is deemed to have done the same with that intent." (Penal Code, Art. 502.) Still, this rule must be construed and considered with reference to and in connection with a subsequent article defining the ingredients of this offense. Article 506 provides that "an assault with intent to commit any other offense is constituted by the existence of the facts which bring the offense within the definition of an assault, coupled with an intention to commit such other offense, as of maiming, murder, rape or robbery." The assault must be coupled with the intention to commit such other offense, and this intention is the very gist of the offense. One of the criterions for determining the offense, and an indispensable one, is, had death resulted would the offense have been murder? (*Yancy* v. *The State*, 20 Texas, 656; *Lockwood* v. *The State*, 1 Texas Ct. App., 749.) A literal construction of Article 502 would seem to make that the only criterion. Such, however, is not and cannot be the case where, as we have seen, both the law and the reason of the law make it otherwise.

It is against reason that the law should decree or presume a citizen guilty of an offense or crime dependent upon intention, when he never intended its commission, and when the law itself has made that intention the essential condition precedent to his guilt. The controlling, the fundamental maxim, of the law in its humanity and its mercy is, that "every man is presumed innocent until his guilt is established." The law will never presume that which is in itself an inconsistency with the law.

Now, the *intent* is the essential ingredient of assault with intent to murder (*Johnson* v. *The State*, 1 Texas Ct. App. 609), and this intent is a material inquiry for the jury, and is determinable by the jury from the evidence. (*Anderson* v. *The State*, 1 Texas Ct. App., 730.) It is a fact which the law cannot presume, "because there are no presumptions of fact which are not entirely within the disposal of a jury in a criminal case" (*Hamilton* v. *The People*, 29 Mich., 173; S. C. 1 Hawley Amer. Crim. Repts., 618), unless they are presumptions which are declared such because they spring naturally and follow irresistibly from acts committed or words spoken. But even in the latter cases,

" when a special intent beyond the natural consequences of the thing done is essential to the crime charged, such special intent must be pleaded, proved and found." (*Gillespie* v. *The State*, 13 Texas Ct. App.. 413.)

For a full discussion of the law with regard to the necessity of proving, and the necessity that the jury should find, the specific intent in cases of assault with intent to murder, see *White* v. *The State*, 13 Texas Court of Appeals, 259; *Harrell* v. *The State*, *Ib.*, 415; *Courtney* v. *The State, Ib.*, 502, and *Gillespie* v. *The State, Ib.*, 413. We hold that the charge of the court above quoted was erroneous and was calculated to mislead the jury; wherefore the judgment is reversed and the cause remanded.

*Reversed and remanded.*